UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERROL MARTELL TRAVIS,

               Plaintiff,                       Case No. 1:12-cv-96

v.                                         Honorable Gordon J. Quist

MARVIN MORGRIDGE et al.,

               Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Norwood, Goodson and Breedlove. The Court will serve the complaint against Defendant Morgridge.

## Discussion

I.      Factual allegations

       Plaintiff Errol Martell Travis presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Bellamy Creek Correctional Facility (IBC), though the

actions about which he complains occurred while he was housed at the Ionia Maximum Correctional Facility (ICF). Plaintiff sues the following ICF employees: Corrections Officer Marvin Morgridge; Deputy Warden Nannette Norwood; Inspector (unknown) Goodson; and Grievance Coordinator M. Breedlove.

Plaintiff alleges that, on July 27, 2011 at 6:00 p.m., Defendant Morgridge sexually assaulted him by touching his penis during a shake down in the prison food service building. Plaintiff asked Morgridge why he had inappropriately touched him, and Morgridge denied doing so. Plaintiff reported the incident to his kitchen work supervisor, Gary Haywood, on August 3, 2011 at 3:00 p.m. Haywood informed Plaintiff that there was nothing he could do about the incident, and he advised Plaintiff to write a grievance. As Plaintiff was leaving the food service department at about 6:15 p.m. that same day, Defendant Morgridge again allegedly touched Plaintiff's penis during the shakedown. Plaintiff claims that he asked Morgridge why he kept touching Plaintiff's penis. Morgridge told Plaintiff to go sit down. When Morgridge had finished shaking down all of the prisoners leaving the building, he went to talk to Gary Haywood about what Plaintiff told Haywood about Morgridge's conduct. When Morgridge returned, he wrote a misconduct ticket against Plaintiff for threatening behavior, claiming that Plaintiff had said, "If you touch me again, I'm going to fuck you up." (Ex. A to Compl., docket #1-1, Page ID#10.) Morgridge then placed a call to the prison control center, after which Plaintiff was taken to administrative segregation.

Following a misconduct hearing held August 8, 2011, Plaintiff was found guilty of making the alleged statement and threatening to injure or physically abuse Morgridge. Plaintiff was ordered to serve 20 days of detention as the sanction for his misconduct conviction. Plaintiff also was warned that he would be reclassified to security classification level 2. Plaintiff complains that the misconduct hearing was not properly investigated or decided, but he does not name as a defendant any officer involved in the hearing proceeding.

On August 12, 2001, Plaintiff told his appellate attorney about the assault.  Counsel sent him a letter informing him where and with whom to file his complaint.  On September 1, 2011, Plaintiff wrote to the Office of the Legislative Ombudsman, complaining that he had been sexually assaulted.  On September 26, 2011, Plaintiff sent Inspector Goodson a copy of the same complaint. He informed her for the second time about the assault.  He received no response.  On September 26, 2011, Plaintiff filed a grievance.  Defendant Breedlove called Plaintiff to the control center on September 28, 2011, to talk about the grievance.  Breedlove informed Plaintiff that the subject of the grievance was out of her control and that the deputy warden would have to answer it.  That same day, Plaintiff spoke with Defendant Deputy Warden Norwood, who told Plaintiff to write a statement about what happened to him.  Plaintiff wrote a complaint and affidavit of truth.  On September 29, 2011, Defendant Goodson called Plaintiff out to speak with him about his complaint. Goodson informed Plaintiff that his complaint and his misconduct hearing packet were being attached to his grievance.  She also read to Plaintiff a statement made by Gary Haywood, a copy of which was not provided to Plaintiff.

On October 15, 2011, Plaintiff sent kites to Defendants Breedlove and Norwood, inquiring about the status of his complaint.  He received no response.  Plaintiff complains that he became very stressed and depressed because he saw Morgridge each day and knew that nothing was being done.  He sent four kites to health care asking to see a mental health doctor about his stress. He claims to have received no response.

Plaintiff called the Michigan State Police on January 16, 2011, informing them of the assault.  He was told by Sergeant Cairnduff that an officer would be out to investigate.  On January 18, 2011, Plaintiff was  called to see Resident Unit Manager (RUM) Gilkey.  Gilkey explained that the state police had called him about Plaintiff's complaint.  Gilkey asked Plaintiff if he had seen anyone in health services, and Plaintiff responded that he had not received a response to his request

-3-

for treatment.  On January 20, 2012, Plaintiff again called Sergeant Cairnduff at the state police.

Cairnduff then told Plaintiff that inmates cannot file charges against people who work in the prison.

Instead, an inspector or other official has to call the state police to file the charges.

On January 23, 2012, RUM Gilkey informed Plaintiff that he had spoken to Defendant Norwood.  Norwood told Gilkey that she had no recollection of Plaintiff's complaint or grievance and that they had no copy of either.  Plaintiff told Gilkey that he had a copy of the original grievance, which had been rejected and not pursued to the next steps because the harassment had stopped.  In a supplement to the complaint filed February 4, 2012, Plaintiff alleges that Defendant Norwood changed his security level from level one to level two and transferred him to the Bellamy Creek Correctional Facility, ostensibly in retaliation for filing the sexual assault complaint against Defendant Morgridge.

Plaintiff alleges that the conduct of all Defendants violated various MDOC policies. Reading Plaintiff's complaint broadly, however, he arguably intends to allege violations of the First and Eighth Amendments and the Due Process Clause of the Fourteenth Amendment.  For relief, he seeks monetary damages, together with the criminal prosecution of Defendant Morgridge.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Norwood, Goodson & Breedlove

Plaintiff alleges that Defendants Norwood, Goodson and Breedlove failed to investigate his grievances, failed to discipline Morgridge, and failed to seek Morgridge's prosecution. Plaintiff also alleges that Defendants violated MDOC policies in handling his complaints and grievances. In addition, Plaintiff alleges that Defendant Norwood retaliated against him by changing his security classification and transferring him to IBC.

Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir.

-5-

2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

In addition, to the extent that Plaintiff alleges that Defendants failed to prosecute or seek prosecution of Morgridge, he fails to state a cognizable claim. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Plaintiff cannot compel a criminal prosecution of Defendant Morgridge because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond*, 476 U.S. at 64-65; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).

Plaintiff next alleges that Defendant Norwood retaliated against him for filing a grievance against Defendant Morgridge. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

-6-

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 129 S. Ct. at 1949 (holding that conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).  Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented any facts to support his conclusion that Defendant Norwood retaliated against him because he filed a grievance against another officer.  Indeed, Plaintiff's only factual allegations about his change in security classification indicate that Norwood's actions were not motivated by retaliation.  Plaintiff specifically alleges that, when he was found guilty of the misconduct on August 8, 2011, he was warned by the hearing officer that his conviction would affect his security classification.  The fact that Norwood eventually made that change is strong evidence that  Norwood's motivation was entirely independent of Plaintiff's complaint against Morgridge. Accordingly, Plaintiff's conclusory allegation fails to state a claim.

Further, to the extent that Plaintiff suggests that Norwood's decision to transfer him to IBC violated his due process rights, he fails to state a claim.  The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484

(1995).  In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation.  The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life.  *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  Because Plaintiff does not have a constitutional right to a particular security level or classification or to be housed in a particular facility, he fails to state a claim.

Plaintiff next broadly alleges that Defendants Norwood, Goodson and Breedlove failed adequately to supervise Morgridge and/or failed to investigate Plaintiff's grievances and complaints.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may

-8-

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Norwood, Goodson and Breedlove engaged in any active unconstitutional behavior.

Finally, to the extent that Plaintiff complains that Defendants lost his complaint and grievance forms and thereby deprived him of the grievance/complaint process, he also fails to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

For all these reasons, Plaintiff fails to state a claim against Defendants Norwood, Goodson and Breedlove.

### B.      Defendant Morgridge

Upon review, the Court concludes that Plaintiff's allegations, taken as true, state a claim for relief sufficient to warrant service of the complaint against Defendant Morgridge.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Norwood, Goodson and Breedlove will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendant Morgridge.

An Order consistent with this Opinion will be entered.


Dated:  March 16, 2012                    _____/s/ Gordon J. Quist_____
                                         GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE