UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ERROL TRAVIS,

                Plaintiff,                                      Hon. Gordon J. Quist

v.                                                 Case No. 1:12-CV-96

MARVIN MORGRIDGE, et al.,

                Defendants.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendant Morgridge's Motion for Summary Judgment. (Dkt. #43). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted and this matter terminated**.


## BACKGROUND

        Plaintiff Errol Martell Travis is presently incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Parnall Correctional Facility (SMT), though the actions about which he complains occurred while he was housed at the Ionia Maximum Correctional Facility (ICF). Plaintiff initiated the present action against the following ICF employees: Corrections Officer Marvin Morgridge; Deputy Warden Nannette Norwood; Inspector (unknown) Goodson; and Grievance Coordinator M. Breedlove. The following allegations are contained in Plaintiff's complaint and the attachments thereto.

Plaintiff alleges that, on July 27, 2011, Defendant Morgridge sexually assaulted him by touching his penis during a shakedown in the prison food service building.  When Plaintiff asked Morgridge why he had inappropriately touched him, Morgridge denied doing so.  On August 3, 2011, Plaintiff reported the incident to his kitchen work supervisor, Gary Haywood, who informed Plaintiff that there was nothing he could do about the incident.  Haywood instead advised Plaintiff to submit a grievance.  Later that same day, as Plaintiff was leaving the food service department, Defendant Morgridge again touched Plaintiff's penis during a shakedown.  When Plaintiff asked Morgridge why he kept touching his penis, Morgridge instructed Plaintiff to sit down.  Morgridge later spoke with Gary Haywood about Plaintiff's allegations.  After speaking with Haywood, Morgridge issued a misconduct ticket against Plaintiff for threatening behavior, claiming that Plaintiff had said, "If you touch me again, I'm going to fuck you up."

Following a misconduct hearing held August 8, 2011, Plaintiff was found guilty of threatening behavior and ordered to serve 20 days of detention as the sanction for his misconduct conviction.  Plaintiff also was warned that his security classification would be increased.  On August 12, 2001, Plaintiff told his appellate attorney about the assault by Morgridge.  Counsel sent Plaintiff a letter informing him where and with whom to file his complaint. On September 1, 2011, Plaintiff wrote to the Office of the Legislative Ombudsman, complaining that he had been sexually assaulted.  On September 26, 2011, Plaintiff sent Inspector Goodson a copy of the same complaint, but received no response.  On September 26, 2011, Plaintiff filed a grievance.

On September 28, 2011, Defendant Breedlove called Plaintiff to the control center to talk about his grievance.  Breedlove informed Plaintiff that the subject of the grievance was out of her control and that the deputy warden would have to answer it.  That same day, Plaintiff spoke with

Defendant Deputy Warden Norwood, who told Plaintiff to write a statement about what happened to him. Plaintiff wrote a complaint and affidavit of truth. On September 29, 2011, Defendant Goodson called Plaintiff out to speak with him about his complaint. Goodson informed Plaintiff that his complaint and his misconduct hearing packet were being attached to his grievance. She also read to Plaintiff a statement made by Gary Haywood, a copy of which was not provided to Plaintiff. On October 15, 2011, Plaintiff sent kites to Defendants Breedlove and Norwood, inquiring about the status of his complaint but received no response. Plaintiff began experiencing stress and depression because he saw Morgridge each day and knew that nothing was being done concerning his allegations.

On January 16, 2012, Plaintiff called the Michigan State Police to report the assault. On January 18, 2011, Plaintiff spoke with Resident Unit Manager (RUM) Gilkey who informed Plaintiff that the state police had called him about the matter. On January 20, 2012, Plaintiff spoke with Sergeant Cairnduff who informed him that inmates cannot file charges against people who work in the prison. Instead, an inspector or other official has to call the state police to file the charges.

On January 23, 2012, RUM Gilkey informed Plaintiff that Defendant Norwood had no recollection of Plaintiff's complaint or grievance concerning his allegations against Morgridge. Plaintiff told Gilkey that he had a copy of the original grievance, which had been rejected and not pursued to the next steps because the harassment had stopped. Defendant Norwood later increased Plaintiff's security level and transferred him to the Bellamy Creek Correctional Facility, in retaliation for filing the sexual assault complaint against Defendant Morgridge.

Plaintiff alleges that Defendants violated various MDOC policies. Plaintiff further asserts that Defendants violated his rights under the First and Eighth Amendments as well as the Due Process Clause of the Fourteenth Amendment. Plaintiff seeks 1.5 million dollars in damages. Plaintiff

also requests that Defendant Morgridge be criminally prosecuted.  On March 16, 2012, the Honorable

Gordon J. Quist dismissed Plaintiff's claims against Defendants Norwood, Goodson, and Breedlove for

failure to state a claim on which relief may be granted.  (Dkt. #13-14).  Defendant Morgridge now

moves for summary judgment on the ground that Plaintiff has failed to properly exhaust his

administrative remedies.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential

element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini*

*v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not

change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

find in her favor, again, so long as she has had a full opportunity to conduct discovery."  *Minadeo*, 398

F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the

nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial."  *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view

the evidence in the light most favorable to the non-moving party, the party opposing the summary

judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's

requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,*544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005),

*cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of his motion for summary judgment, Defendant Morgridge has submitted evidence establishing that during the relevant time period Plaintiff did not properly grieve through all three steps of the grievance process any grievance concerning his allegation that on July 27, 2011, and again on August 3, 2011, he was sexually assaulted by Defendant Morgridge.  (Dkt. #44, Exhibit 1). In response, Plaintiff has submitted copies of two grievances he filed.  (Dkt. #48).

The first such grievance, filed on September 26, 2011, does not concern Plaintiff's allegations against Defendant Morgridge, but instead concerns Plaintiff's distress that the Michigan State Police were not sufficiently investigating his allegations.  The second grievance, filed on October 14, 2011, likewise does not concern Plaintiff's allegations against Defendant Morgridge, but instead concerns alleged harassment Plaintiff endured from two other prison guards, neither of whom are party to this action.  In sum, neither of these grievances concerns Plaintiff's allegations against Defendant Morgridge.  Moreover, there is no evidence that Plaintiff pursued either of these grievances through all three steps of the grievance process.  Accordingly, the Court concludes that Defendant Morgridge has met his burden of demonstrating that Plaintiff has failed to properly exhaust his claims against him.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Morgridge's Motion for Summary Judgment</u>, (dkt. #43), be **granted, Plaintiff's claims against Defendant Morgridge be dismissed without prejudice for failure to exhaust administrative remedies, and this matter terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  November 2, 2012                          /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge