UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERROL MARTELL TRAVIS,

        Plaintiff,

v.

MARVIN MORGRIDGE et al.,

        Defendants.

Case No. 1:12-CV-96

HON. GORDON J. QUIST

### ORDER REJECTING REPORT AND RECOMMENDATION AND REMANDING ON THE ISSUE OF SUMMARY JUDGMENT

On November 2, 2012, Magistrate Judge Ellen S. Carmody issued a Report and Recommendation (R & R) (docket no. 65) recommending that this Court grant Defendant Marvin Morgridge's (Defendant) Motion for Summary Judgment (docket no. 43) because Plaintiff, Errol Travis, failed to exhaust his available administrative remedies. On November 15, 2012, Plaintiff filed a timely Objection to the R & R, arguing, as he did in his Response in Opposition to Defendant's Motion for Summary Judgment, that he attempted to file a Step I grievance but the grievance coordinator failed to assign his grievance a unique identifying number and she "refused" to provide Plaintiff with a Step II or Step III grievance form (docket no. 48, Page ID 153). Because the Court finds that Defendant has failed to properly support his Motion for Summary Judgment, the Court will reject the magistrate judge's R & R and remand Defendant's Motion for Summary Judgment for further consideration.

### I. Background

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The

alleged events occurred while Plaintiff was housed at the Ionia Maximum Correctional Facility (ICF). Plaintiff alleges that on July 27, 2011, around 6:00 p.m., Defendant sexually assaulted him by touching his penis during a shakedown of the prison food service building. When Plaintiff asked Defendant why he had inappropriately touched him, Defendant denied doing so. Plaintiff reported the incident to his work supervisor, Gary Haywood, on August 3, 2011, at 3 p.m. Haywood informed Plaintiff that there was nothing that Haywood could do about the incident, but stated that Plaintiff could file a grievance. The same day, as Plaintiff was leaving the food service building around 6:15 p.m., Defendant again allegedly touched Plaintiff's penis during a shakedown. Plaintiff states that he asked Defendant why he kept touching Plaintiff's penis, and in response, Defendant told Plaintiff to go sit down, which Plaintiff did. After Defendant finished the shakedown of the other prisoners, Defendant went to speak with Haywood about the incidents. When Defendant returned, he wrote a misconduct ticket for Plaintiff, claiming that Plaintiff had said, "If you touch me again, I'm going to fuck you up," which Plaintiff denies. (Compl., Docket no. 1, Page ID 3; *id.*, Ex. A, Page ID 10.) Plaintiff was then taken to administrative segregation. On Aug. 12, 2001, Plaintiff informed his appellate attorney of the assault. Counsel sent him a letter containing information on how to file a complaint. On September 1, 2011, Plaintiff wrote a letter to the Michigan Office of Legislative Corrections Ombudsman, complaining that he had been sexually assaulted. On September 1, 2011, and again on September 12, 2011, Plaintiff wrote a letter to the ICF prison inspector, Goodson, complaining that Plaintiff had been sexually assaulted and requesting that the Michigan State Police pursue criminal prosecution of Defendant. On September 26, 2011, Plaintiff filed a Step I grievance. (*Id.*, Ex. B2.) The Step I grievance form attached to Plaintiff's Complaint does not have a grievance identification number, nor is the bottom portion of the form—the area designated for an administrative response—completed. (*See id.*) Plaintiff alleges

that on September 28, 2011, the grievance coordinator, M. Breedlove, called Plaintiff out to the prison control center to discuss the Step I grievance Plaintiff filed on September 26, 2011. Breedlove told Plaintiff that she could not handle the grievance, but the deputy warden could do so. The same day, Plaintiff spoke with Deputy Warden Norwood, who had Plaintiff write a statement of facts. (*Id.*, Ex. B3.) The following day, Inspector Goodson called Plaintiff out to speak about the complaint, and informed Plaintiff that Plaintiff's complaint and misconduct hearing packet would be attached to Plaintiff's September 26, 2011, grievance. Inspector Goodson also read Plaintiff a statement from Haywood, but Plaintiff was not provided a copy of the statement. On October 15, 2011, Plaintiff sent a kite to the grievance coordinator requesting a copy of the grievance hearing packet for the September 26, 2011, Step I grievance. (*Id.*, Ex. B4.) Plaintiff stated in the kite that it was his second kite requesting that the grievance coordinator send him a grievance receipt for the September 26, 2011, Step I grievance. (*Id.*) He also noted that it had been two weeks without a response. (*Id.*) On October 20, 2011, Plaintiff also wrote to Deputy Warden Norwood requesting information on the status of his September 28, 2011, complaint. (*Id.*, Ex. B5.) Plaintiff claims he never received a response to his Step I grievance. In January 2012, after learning that Plaintiff's "complaint and grievance came up missing," Plaintiff filed this lawsuit, specifically noting in his Complaint that he had made efforts to exhaust all his remedies. (*Id.*, Page ID 7.)

## II. The Report and Recommendation Will Be Rejected

When a party properly objects to any part of a magistrate judge's disposition, this Court must conduct a *de novo* review of the disposition. Fed. R. Civ. P. 72(b)(3). After a thorough review of the R & R, Plaintiff's objections, and the pertinent portions of the record, the Court concludes that the R & R should be rejected.

The R & R recommends that this Court grant Defendant's Motion for Summary Judgment

3

because Plaintiff has failed to exhaust his available administrative remedies through the Michigan Department of Corrections (MDOC) grievance process. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). "In reviewing the record, we view the factual evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. Ultimately, the proper inquiry is whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rupert v. Daggett*, 695 F.3d 417, 423 (2012) (quoting *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008)) (citations omitted). A moving party can satisfy its burden by showing that "the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006). Once a moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2502, 2510 (1986)). While a moving party need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000), a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quotation omitted); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here a moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quotation omitted). The Sixth Circuit has emphasized that the party with the burden of

4

proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quotation omitted). Therefore, summary judgment is "inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S. Ct. 1545, 1552 (1999).

In this case, Defendant limits his summary judgment motion to the single issue of administrative exhaustion.[1] A prisoner asserting an action under 42 U.S.C. § 1983 with respect prison conditions is required by statute to exhaust all "administrative remedies as are available" to the prisoner before filing a lawsuit. 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007). Rather, the failure of a prisoner to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden of establishing. *Id.* The United States Supreme Court has stated that the requisite exhaustion is "proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91, 126 S. Ct. 2378, 2386 (2006).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if the prisoner fails to complete the prison authority's administrative review process in accordance with the deadlines and other applicable procedural rules. *See, e.g.*, *Bock*, 549 U.S. at 218, 127 S. Ct. at 922–23; *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (finding whether a prisoner "properly" exhausted is determined by evaluating compliance with a prison's administrative regulations). However, a

---

[1] The Court recognizes that Defendant's present Motion for Summary Judgment, which is limited to the issue of exhaustion, does not count toward the applicable limit of summary judgment motions in the case management order. (See Docket no. 36, Page ID 107).

prison's procedural requirements may not be imposed in a way that offends the United States Constitution or the intended purposes of 1997e(a). *See Spruill*, 372 F.3d at 230. These purposes include, whenever possible, the settlement of inmate grievances by prison administrators and the reduction of burdens on federal courts through the creation of barriers to frivolous prisoner lawsuits. *Id.* In the MDOC context, Michigan prisoners are required to comply with MDOC Policy Directive 03.02.130. In pertinent part, the policy states,

> Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance (CSJ-247A) to the Step I Grievance Coordinator ....[2]
>
> The Grievance Coordinator shall log and assign a unique identifying number to each Step I grievance received, including those which may be rejected ....
>
> After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected.
>
> \*\*\*
>
> A grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response. To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions.

MDOC Policy Directive 03.02.130 ¶¶ V–X, BB.

In this case, both parties agree that Plaintiff did not complete a Step II or III form. However, Plaintiff argues that he "was impeded from exhausting his remedies," because the grievance coordinator failed to assign his Step I form a unique identifying number (docket no. 68, Page ID 231) and the coordinator "refused" to provide him a Step II or III form (docket no. 48, Page ID 153).

---

[2] In the case of grievances related to sexual assault, a matter under the jurisdiction of the Internal Affairs Division, MDOC Policy Directive 01.01.140, ¶ D, a prisoner is not required to attempt to resolve the grievable issue with the staff member, MDOC Policy Directive 03.02.130, ¶ P.

Defendant concedes that, "taking the facts in a light most favorably to Plaintiff, he filed a Step I grievance against Defendant Morgridge."[3] (Docket no. 44, Page ID 131.) However, in support of his Motion for Summary Judgment, Defendant merely attaches an MDOC Prisoner Step III Grievance Report showing that Plaintiff has not completed all three steps of the grievance process. (*Id.*, Ex. 1.) Defendant then concludes that because Plaintiff has not completed all three steps, he has abandoned the grievance process and is procedurally barred from bringing this cause of action. At no point does Defendant address Plaintiff's allegations that Plaintiff attempted to exhaust his remedies but was unable to do so because the grievance coordinator did not assign his Step I grievance an identification number, did not process his grievance, refused to respond to his numerous inquiries, and refused to provide him with a Step II or Step III form.[4] Plaintiff consistently raised these allegations in his Complaint (docket no. 1), his Response in Opposition to Defendant's Motion for Summary Judgment (docket no. 48), and again in his Objection to the Report and Recommendation (docket no. 68). Defendant failed to address Plaintiff's allegations in either his Motion for Summary Judgment, or in a reply (Defendant waived his opportunity by failing to file a reply).

---

[3] The Court agrees that the evidence, when viewed in a light most favorable to Plaintiff, shows that Plaintiff has filed a Step I grievance on the issue of his sexual assault. The R & R concludes that Plaintiff's Step I form is technically a grievance against the ICF grievance coordinator for impeding Plaintiff from exhausting his administrative remedies against Defendant, and not a grievance against Defendant. (*See* R & R, Docket no. 65, Page ID 226; Compl., Docket no. 1, Ex. B2.) However, for purposes of exhaustion, and under the circumstances alleged, the Court finds the issue of the alleged sexual assault is very closely related to Plaintiff's Step I grievance that he has been impeded from exhausting his grievance against Defendant. In fact, in the "Affidavit of Truth," attached to the grievance, Plaintiff again outlines his allegations as they relate to Defendant, not the grievance coordinator. (Compl., Docket no. 1, Ex. B3.) Thus, the two issues are sufficiently intertwined for purposes of exhaustion to constitute a Step I grievance regarding the sexual assault.

[4] The Court also notes that Plaintiff could not have successfully filed a Step II or III grievance form without a unique identifying number for his Step I grievance. That predicament is precisely why grievance coordinators are required to assign a unique identifying number to Step I grievance forms even if they are rejected. Rather than receiving a rejection, Plaintiff claims he received no response at all. In his October 15, 2011, letter, Plaintiff specifically asked the grievance coordinator for a copy of his grievance packet or a *receipt* for or a response to the grievance. (Compl., Docket no. 1, Ex. C4.)

Viewed in a light most favorable to Plaintiff, Plaintiff's allegations raise a genuine issue of fact. Plaintiff not only alleges that there were insurmountable barriers to his ability to complete Steps II and III of the grievance process, but offers admissible evidence that he was called out by ICF Grievance Coordinator Breedlove to discuss his Step I grievance and that Plaintiff sent additional communications to Breedlove to inquire about a grievance receipt or response, suggesting MDOC received Plaintiff's Step I grievance but did not process it. Plaintiff is not required to complete all three grievance steps if it was impossible for him to do so. Statutorily, Plaintiff is only required to exhaust all "administrative remedies as are available" to him. 42 U.S.C. § 1997e(a). Moreover, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232. Were a court required to hold that a plaintiff failed to exhaust his administrative remedies even though he was denied a Step I unique identifying number or refused the necessary forms, such a policy would likely offend the purposes of the statute or the Constitution because it would render administrative review illusory and deny a plaintiff judicial review of his constitutional claims. Therefore, Defendant's Step III Grievance Report (docket no. 44, Ex. 1), standing alone, is insufficient to properly support Defendant's Motion for Summary Judgment.[5] Absent an affidavit from the pertinent ICF staff members addressing the salient facts alleged by Plaintiff, or other evidence specific to the facts alleged, the Court finds that the evidence in the record is susceptible to different interpretations or inferences by a trier of fact, *Hunt*, 526 U.S. at 553, 119 S. Ct. at 1552, and Defendant has not established that "no reasonable trier of fact could find other than for the moving party," *Calderone*, 799 F.2d at 259. Therefore, the Court will reject the R & R.

---

[5] In fact, on the basis of Plaintiff's allegations, it is entirely predictable that MDOC's records show no evidence of a Step III grievance on the issue of sexual assault. The more pertinent question is whether MDOC has evidence to support that no rational trier of fact could have found that Plaintiff exhausted all his *available* administrative remedies.

### III. Defendant's Motion Will Be Remanded

Since the issue of exhaustion is a matter to be determined by the court and not a matter for the jury, the Court will remand Defendant's Motion for Summary Judgment to the magistrate judge for a report and recommendation on the issue of exhaustion. Although the Sixth Circuit does not appear to have addressed the issue, the Second Circuit recently confirmed that there is no right to a jury trial on the issue of exhaustion. *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011) (per curiam). In so holding, the Second Circuit joined the Third, Fifth, Seventh, Ninth, and Eleventh Circuits in concluding that there is no Seventh Amendment right to a jury trial on the issue of exhaustion. *See id.* at 308 (citing *Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010); *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010); *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008); and *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)). The court explained that exhaustion under the Prison Litigation Reform Act (PLRA) "is a matter of judicial administration in the sense that '[u]ntil the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to [do so].'" *Id.* at 308–09 (quoting *Pavey*, 544 F.3d at 741). Thus, exhaustion does not present a jury issue even if there are issues of fact with regard to whether the prisoner-plaintiff properly exhausted. *Id.* at 309 ("Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute."); *see also Johnson v. Baker*, No. 11-3331, 2012 WL 2685046, at *3 (C.D. Ill. July 6, 2012) ("In the context of exhaustion of administrative remedies, if issues of fact exist, a judge—not a jury—holds a hearing and resolves the factual disputes."); *Cohron v. City of Louisville*, No. 06-570-C, 2012 WL 1015789, at *4 (W.D. Ky. Mar. 22, 2012) ("A prisoner plaintiff has no right to a jury trial solely on the issue of exhaustion.").

Therefore,

**IT IS HEREBY ORDERED** that the magistrate judge's Report and Recommendation (Docket no. 65) issued on November 2, 2012, is **REJECTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Docket no. 43) is **REMANDED** to the magistrate judge for a report and recommendation on the issue of exhaustion. The magistrate judge may elect to further develop the record by affording Defendant an opportunity to submit evidence addressing Plaintiff's claim that he was prevented from exhausting his available administrative remedies and/or holding an evidentiary hearing on the issue of exhaustion, if the magistrate judge deems a hearing warranted.

Dated: January 22, 2013 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE